**UNITED STATES of America**

v.

**Allen Leroy ANDERSON, Appellant.**

**No. 18066.**

United States Court of Appeals,
Third Circuit.

Argued April 8, 1971.

Decided Sept. 27, 1971.

Ira Rabkin, Molotsky, Rabkin & Gross, Camden, N. J., for appellant.

D. William Subin, Asst. U. S. Atty., Camden, N. J. (Herbert J. Stern, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

The appellant here was charged in a three-count indictment alleging in Count I a violation of Title 18, U.S.C. § 2113(b), in Count II a violation of Title 18, U.S.C. § 2113(a) and in Count III a violation of Title 18, U.S.C. § 2113(d).[1]

---

1. The pertinent subparagraphs of 2113 of the Crimes Act, Title 18, U.S.C., are as follows:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

The pertinent facts are as follows: On December 9, 1968, Mrs. Lillian Thompson was behind her desk in the Moorestown Savings and Loan Association, at about 1:30 p. m., when she looked up and saw a black man standing right at her desk with a gun pointed at her. He tossed a bag at her, opened the wrought iron gate in front of her desk and motioned with the gun to take the money from the cash drawer and put it in the bag. He further ordered Mrs. Ruth Allen, another employee of the Moorestown Savings and Loan Association, to get behind Mrs. Thompson and after Mrs. Thompson had gathered all of the money from the drawer, he forced both her and Mrs. Allen down a hallway and into a washroom where he locked the door. At the time the appellant stood before her with the gun, Mrs. Thompson looked at him and said, "Oh, no, not you again." Before she handed the money to the appellant, she looked at him once more and later stated that she had "a good two minutes to look at him, perhaps more." During the course of the trial, Mrs. Thompson left the witness stand, pointed her finger at the appellant, and said, "This is the man", positively identifying him. On the day in question, she testified that he was clean shaven, with a slight mustache and wore sunglasses and a hat, and, although his appearance at the trial was somewhat different from the above described, she was positive in her identification.

In order to weaken her testimony, an attorney for the defendant stated that she had testified previously at a hearing that she "believed" the appellant was the one who robbed the bank.

■ Mrs. Allen, also a witness for the Government, was shown a package of thirteen photographs and she selected the same two pictures of the defendant which had previously been identified by Mrs. Thompson. There was nothing incorrect about this procedure. United States v. Hall, 437 F.2d 248. She, likewise, identified the defendant in open court.

The defense presented an alibi by way of the testimony of one Will H. Nealey who stated that he was with the defendant on the night before and on the day of the bank robbery and that he drove the defendant to the home of his sister in Salem, New Jersey, between 1:30 and 2:00 a. m., on December 9, 1968, and they left after about thirty minutes to go to the Nealey home in Woodstown, New Jersey, to sleep. He testified that when they awoke, he accompanied the defendant to a bank in Woodstown, about 9:00 or 9:15 a. m., and then they went back to the defendant's sister's house where they parted company about 9:30 or 10:00 a. m. Defendant's sister, Dora Polk, testified that he remained at her house watching television until about 4:00 p. m. on the day in question.

The defendant took the stand and testified to the same series of events and said he had not appeared at the Moorestown Savings and Loan Association, had not committed the robbery and knew nothing about the same.

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

"(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

"Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

■ The first part of the appellant's argument concerned itself with his identity and a careful examination of the record shows that there was sufficient identification made by the Government's witnesses to enable the jury to determine if the appellant was the individual in question. Further, the testimony of an accomplice, Dorian Nichols, added little doubt to his being the person involved.

■ After the verdict of guilty was reached, the court, in sentencing the appellant, stated as follows:

"I am going to mold the verdicts that have been returned. I am going to sentence you on Title 18, U.S.C., Section 2113(d) to a term of imprisonment of twenty-five years, and on the other two verdicts on 2113(b) and 2113(a); these will be merged into the sentence imposed on 2113(d); so that the total term of imprisonment is twenty-five years."

The imposition of the above sentence was not an instance of consecutive sentences being imposed for distinct violations of Title 18, U.S.C. § 2113, arising out of a single course of conduct which was held illegal in Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L. Ed.2d 370, as the Court there held Congress did not intend separate punishments should be imposed under the statute. United States v. Welty, 3 Cir., 426 F.2d 615. Here, the court's wording in the molding of the sentence on Criminal Form No. 25 stated as follows:

"IT IS ADJUDGED that the defendant upon his plea of Not Guilty & a Verdict of Guilty, has been convicted of the offense of Bank Robbery as charged and the court having asked the defendant whether he has anything to say why judgment should not be pronounced, and no sufficient cause to the contrary being shown or appearing to the Court,

"IT IS ADJUDGED that the defendant is guilty as charged and convicted.

"IT IS ADJUDGED that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of Twenty-Five (25) years."

This sentence complies with the requirement of the recent en banc August 31, 1971 opinion of this court in United States v. Corson, 449 F.2d 544, that "a general sentence on all counts" be imposed. (P. 551)

Accordingly, the sentence given here is not erroneous and the judgment of the district court will be affirmed.